UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| RAYMOND CHESTNUT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00005-JMS-MJD |
| | ) | |
| CHARLES DANIELS, | ) | |
| | ) | |
| Respondent. | ) | |

**Entry Denying Petition for Writ of Habeas Corpus and
Directing Entry of Final Judgment**

On December 12, 2016, petitioner Raymond Chestnut filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging 18 separate disciplinary hearings in Case No. 2:16-cv-0459-WTL-DKL. The Court determined that each disciplinary proceeding had the status of a separate court proceeding and ordered that 17 new habeas actions be filed. This action relates to Mr. Chestnut's challenge to the disciplinary proceeding that commenced with Report No. 2221354.

The respondent filed a return to order to show cause. Mr. Chestnut did not reply and the time to do so has passed. For the reasons explained in this Entry, Mr. Chestnut's habeas petition must be **denied**.

**A.     Legal Standards**

"Federal inmates must be afforded due process before any of their good time credits-in which they have a liberty interest-can be revoked." *Jones v. Cross,* 637 F.3d 841, 845 (7th Cir. 2011). "In the context of a prison disciplinary hearing, due process requires that the prisoner receive (1) written notice of the claimed violation at least 24 hours before hearing; (2) an

opportunity to call witnesses and present documentary evidence (when consistent with institutional safety) to an impartial decision-maker; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." *Id.*; *see also Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974). In addition, "some evidence" must support the guilty finding. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016).

B.     **The Disciplinary Proceeding Regarding Incident Report 2221354**

An Incident Report charging Mr. Chestnut with violating Code 297, use of phone for abuses other than criminal to circumvent the ability of staff to monitor the frequency of telephone use, content of call or number called, stated the following:

> On October 13, 2011 at 11:30 a.m., a SIS investigation was completed regarding inmate Chestnut, Raymond #33692-83 contacting another inmate housed at USP Atlanta, who possessed a cellular telephone. This investigator interviewed inmate Chestnut on 10/8/11 and he stated he received the telephone number (423) 383-4624 from a family member in a letter. Chestnut claims he did not known [sic] he was calling an inmate at a Federal Prison on a cell phone. Chestnut called the number twenty-nine times (29) from July 30, 2011 through August 31, 2011. The first time Chestnut called the number, he used inmate Conyers', Anton #15578-171 PAC#.
>
> On August 6, 2011, Chestnut called the number for the first time, using his own PAC#. Chestnut continued to call using his own PAC# through August 31, 2011. On August 23, 2011, at 9:26 A.M., Chestnut placed a call to the cellphone. During the call, Chestnut asked his friend, "Where is your celly from?" On August 23, 2011 at 5:07 P.M., Chestnut makes another call. The call is answered by an unknown inmate. The unknown inmate informs Chestnut, "Hey he will be back. He went to the commissary. He will be back in like 20 minutes." On August 30, 2011 at 4:30 p.m., inmate Chestnut calls the number again and the second party says," how you get out so early?"
>
> Chestnut responds, "they do that. Soon as they clear count, they let us out, here. We lock down at a quarter till four though.["] Second party replied: "oh ok. Hey look, I gotta run cause we gettin ready to come out too but I gotta run right outside they getting ready to open the doors." Based on the language used in the telephone calls cited, it is clear inmate Chestnut knew he was calling an inmate housed at a Federal Prison, on a cell phone.

Dkt. 23-13 at 8-11.

Mr. Chestnut was given a copy of the Incident Report and was informed of his rights. *Id.* at 11. He said he understood his rights and that he did not know he was calling another inmate. He said he thought the other person "was out in society. The person who gave me the number thought it was from someone on the outside." *Id.* He did not request any witnesses at that time. *Id.* The matter was referred to the Unit Disciplinary Committee ("UDC").

Mr. Chestnut appeared before the UDC on October 18, 2011. He elected to have S. Brock serve as a staff representative. *Id.* at 12. He also requested inmate Conyers as a witness to testify that Mr. Chestnut did not use his PAC number. *Id.* at 12. The UDC referred the incident report to a Hearing Officer. *Id.* Mr. Chestnut was advised of his rights before the Hearing Officer. *Id.* at 13.

Mr. Chestnut appeared before the Hearing Officer on December 12, 2011. *Id.* at 16. The Hearing Officer informed Mr. Chestnut of his rights and he stated he understood. S. Brock appeared as Mr. Chestnut's staff representative. *Id.* Mr. Chestnut denied using another inmate's PAC number and stated he did not know the person he was calling was another inmate. The witness testified that he did not give Mr. Chestnut his pin number to use. *Id.* at 20. The Hearing Officer concluded that Mr. Chestnut violated Code 299, with conduct which disrupts the orderly running of the institution, most like a violation of Code 297. *Id.* at 16. The Hearing Officer stated that this finding was supported by the reporting officer's account in the Incident Report, which was corroborated by staff memoranda and more credible than Mr. Chestnut's denial. *Id.* at 17. The Hearing Officer sanctioned Mr. Chestnut with the loss of twenty-seven (27) days of good conduct time and a one-hundred-eighty (180) day loss of telephone privileges. *Id.* at 18. A copy of the Hearing Officer's report was provided to Mr. Chestnut on January 9, 2013. *Id.* He was

provided with an amended copy of the report on January 25, 2013, to correct the error made in his register number on the previous report. *Id.*

   C.   **Analysis**

Mr. Chestnut argues that his due process rights were violated during the disciplinary proceeding. His claims are that: 1) he did not receive a written copy of the incident report or notice of the charges; 2) he was not afforded an opportunity to call witnesses or present documentary evidence in his defense; and 3) after the hearing, he requested a copy of the Hearing Officer's findings and decision but was not provided a copy. Dkt. 6.

The record dispels Mr. Chestnut's first and third claims. Mr. Chestnut was given a copy of the incident report on October 13, 2011, more than 24 hours before the hearing. Dkt. 23-13 at 11. He also was given a copy of the Hearing Officer's decision on January 9, 2013, and a copy of the revised decision on January 25, 2013. *Id.* at 18. No due process violation occurred under these circumstances. Moreover, he has not identified any prejudice so any possible due process violations would result in harmless error. *See Jones v. Cross*, 637 F.3d 841, 846-47 (7th Cir. 2011).

As to Mr. Chestnut's second claim, an inmate's rights to call witnesses and present evidence are not unlimited in a disciplinary setting. "Prison authorities are not compelled to accept requests [to call witnesses] that threaten institutional goals or are irrelevant, repetitive, or unnecessary." *Donelson v. Pfister,* 811 F.3d 911, 918 (7th Cir. 2016) (internal quotation omitted). Here, Mr. Chestnut requested the inmate whose PAC or pin number was allegedly used for the first call. That witness said that he had not given Mr. Chestnut his pin number, and the hearing considered his statement. Mr. Chestnut has not identified any other witnesses or

evidence that he allegedly was denied. Under these circumstances, there was no violation of Mr. Chestnut's due process rights.

Although Mr. Chestnut does not challenge the sufficiency of the evidence, "a hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison,* 820 F.3d at 274. The Court finds that the Incident Report and the investigation memorandum satisfy the "some evidence" standard. The investigation showed that when prison officials searched the inmate housed in USP Atlanta who Mr. Chestnut had been calling, they found a cell phone. That inmate was interviewed and he said, "Man, please don't tell me that Chestnut snitched me out." Dkt. 23-13 at 17. The evidence of the conversations themselves also revealed that Mr. Chestnut knew he was talking to another inmate on a cell phone.

Mr. Chestnut was given adequate notice and had an opportunity to defend the charge. The Hearing Officer provided a written statement of the reasons for the finding of guilt and described the evidence that was considered. There was sufficient evidence in the record to support the finding of guilt. Under these circumstances, there were no violations of Mr. Chestnut's due process rights.

### D. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Chestnut to the relief he seeks. Accordingly, Mr. Chestnut's petition for a writ of habeas corpus relating to Report No. 2221354 must be **denied** and the action dismissed.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 5/23/2018

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

RAYMOND CHESTNUT
13465-171
EDGEFIELD FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 725
EDGEFIELD, SC 29824

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov